UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THAI-LAO LIGNITE (THAILAND) CO., LTD. & HONGSA LIGNITE (LAO PDR) CO., LTD.,

    Plaintiffs,

v.

GOVERNMENT OF THE LAO PEOPLE'S DEMOCRATIC REPUBLIC

    Defendant.

13 CV 1332

Civil Action No.:

**COMPLAINT**

Plaintiffs Thai-Lao Lignite (Thailand) Co., Ltd. ("TLL") and Hongsa Lignite (Lao PDR) Co., Ltd. ("HLL"), by and through their undersigned counsel, allege as follows:

1. Plaintiffs bring this action under the New York Uniform Foreign Country Money-Judgments Recognition Act, N.Y. C.P.L.R. 5301-5309, to enforce a money judgment of the High Court of England and Wales issued in their favor against Defendant, the Government of the Lao People's Democratic Republic ("Laos").

2. TLL is a limited liability company organized under the laws of Thailand, with its principal place of business at 19/1 Soi Samanchan, Sukhumvit Road 42, Klongtoey, Bangkok, Kingdom of Thailand.

3. HLL is a limited liability company organized under the laws of the Lao People's Democratic Republic, with its principal place of business at 14 Unit 2, Wat Nak Road, Sisatanak, Vientiane, Lao People's Democratic Republic.

4. Defendant is the Government of the Lao People's Democratic Republic and is a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1332, 1391(f), 1441(d), 1602-1611.

5. This Court has subject-matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1330(a) and 1605(a)(1).

6. This Court has personal jurisdiction over Laos pursuant to 28 U.S.C. § 1330(b).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f).

**Facts**

**A.     The Contractual Arrangements**

8. On May 29, 1992, TLL and Laos entered into a concession contract (the "First Concession Contract") granting TLL the right to conduct lignite survey and mining operations in the Hongsa region of Laos for a term of 15 years and obligating TLL to establish a new company, HLL, as a joint enterprise between TLL and a Lao state-owned enterprise.

9. On July 21, 1993, TLL and Laos entered into a second concession contract (the "Second Concession Contract") extending the concession area and authorizing TLL to proceed with feasibility studies regarding the construction of a lignite-fired power station within the concession area.

10. On July 22, 1994, TLL and Laos entered into a comprehensive Project Development Agreement (the "PDA") which granted TLL an exclusive mandate and rights to implement the project to mine lignite coal reserves in the Hongsa region and to develop an onsite power plant.

11. The PDA was intended to form the integrated basis for developing the Hongsa site, and it defines and references the First and Second Concession Contracts as the "Prior

Contracts." PDA, Art. 1. The parties also refer to the First and Second Concession Contracts as the "Mining Contracts."

12. In Article 14.1 of the PDA, TLL and Laos expressly agreed to submit any dispute arising out of the PDA to final and binding arbitration under the UNCITRAL Arbitration Rules, with the seat of the arbitration in Kuala Lumpur, Malaysia.

13. In Article 14.2 of the PDA, Laos expressly and irrevocably waived its sovereign immunity in connection with any dispute involving or concerning the PDA. Specifically, Article 14.2 provides:

> 14.2 <u>Waiver of Sovereign Immunity</u>. Each of the parties hereto irrevocably waives, to the fullest extent permitted by applicable law, all immunity (whether on the basis of sovereignty or otherwise) from jurisdiction, attachment (both before and after judgment), and execution to which it might otherwise be entitled in any action or proceeding relating in any way to this Agreement in the courts of the Lao People's Democratic Republic or the Kingdom of Thailand or other relevant jurisdictions, and neither party will raise or claim or cause to be pleaded any such immunity at or in respect of any such action or proceeding.

PDA, Art. 14.2.

14. The foregoing waiver of sovereign immunity is irrevocable by its terms within the meaning of Section 1605(a)(1) of the FSIA.

15. In addition to waiving sovereign immunity, Laos agreed in the PDA that any arbitral award would be final, conclusive, and binding, and it expressly covenanted not to appeal or seek annulment of any such award in any court. Specifically, Article 14.1(vi) of the PDA (hereafter, "Covenant Not to Sue") provides that:

> Any award or determination of the arbitral panel shall be final, nonappealable, binding, and conclusive upon the parties, and judgment may be entered in any court of competent jurisdiction. The parties waive to the extent permitted by law any rights to appeal or any review of such award by any court or tribunal of competent jurisdiction.

PDA, Art. 14.1(vi).

**B.     The Award**

16.     In August 2006, a dispute arose under the PDA between Plaintiffs and Laos. Reconciliation efforts failed and on June 26, 2007, Plaintiffs commenced arbitration by duly serving a Notice of Arbitration upon Laos.

17.     On November 4, 2009, the arbitral tribunal issued a unanimous final award (the "Award"), which disposed of all the parties' claims. The tribunal awarded Plaintiffs, on a joint basis, (1) damages in the sum of $56,210,000, with interest to accrue at the New York statutory judgment rate of 9% per annum, and (2) the sum of $1,000,000 in attorneys fees based on a finding that Plaintiffs were the prevailing parties in the arbitration. The tribunal also denied Laos' counterclaims in their entirety.

18.     Laos failed to make any payment to Plaintiffs under the Award.

**C.     The Proceedings to Enforce the Award in New York**

19.     On June 8, 2010, Plaintiffs commenced proceedings to enforce the Award in the United States pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, 330 U.N.T.S. 38 (Jun. 5, 1958) and Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.*, by filing a petition to confirm the Award ("Petition to Confirm") in the Supreme Court of the State of New York, New York County, Commercial Division.

20.     On July 9, 2010, Laos removed the case to the United States District Court for the Southern District of New York. The case was assigned to Judge Kimba M. Wood and was numbered 10 Civ 5256 (KMW).

21. On October 1, 2010, Laos filed a motion to dismiss Plaintiffs' Petition to Confirm.

22. On August 3, 2011, Judge Wood issued an Opinion and Order (the "Opinion and Order") denying Laos' motion to dismiss, granting Plaintiffs' Petition to Confirm, and entering judgment in favor of Plaintiffs in the amount of $56,210,000, plus interest from November 4, 2009 to the date of satisfaction. A true and correct copy of the Opinion and Order is attached hereto as Exhibit A.

23. Judge Wood squarely rejected Laos' argument that the arbitral tribunal wrongfully exercised jurisdiction over disputes arising under the Mining Contracts. In short, the Court held that:

> The Panel did not arbitrate disputes under the Mining Contracts—it interpreted the scope of the term 'TLL's total investment costs' in the PDA. The Panel's interpretation of that term and calculation of those costs was just that—interpreting a contract and calculating damages.

Opinion and Order at 28.

24. On August 5, 2011, the Clerk of this Court entered a formal Judgment in favor of Plaintiffs in the amount of $56,210,000, plus interest from November 4, 2009 to the date of satisfaction. A true and correct copy of the August 5, 2011 Judgment is attached hereto as Exhibit B.

25. On Plaintiffs' motion, the Judgment was amended on April 23, 2012 to increase the amount of the judgment from $56,210,000 to $57,210,000, with interest to accrue at 9% per annum from November 4, 2009 to the date of satisfaction, as awarded by the tribunal in the Award. A true and correct copy of the April 23, 2012 Amended Judgment is attached hereto as Exhibit C.

26. On July 13, 2012, the United States Court of Appeals for the Second Circuit issued a Summary Order affirming Judge Wood's judgment in all respects. A true and correct copy of the Second Circuit's July 13, 2012 Summary Order is attached hereto as Exhibit D. The United States Supreme Court denied Laos's petition for a writ of *certiorari* on February 25, 2013.

**D.     The Proceedings to Enforce the Award in England**

27. On August 3, 2010, Plaintiffs commenced proceedings to enforce the Award in England pursuant to Section 101 of the English Arbitration Act 1996 by filing a Claim Form in the High Court of Justice, Queen's Bench Division, Commercial Court (the "London Court").

28. Plaintiffs duly served the Claim Form on Laos, and Laos appeared by attorney in the English enforcement proceedings.

29. On October 26, 2012, Mr Justice Eder issued a judgment (the "Eder Judgment") holding that the Award was "manifestly valid" and ordering Laos to pay security in the full amount owed under the Award (including accrued post-award interest), failing which Plaintiffs would be permitted to enforce the Award as a judgment of the English court. A true and correct copy of the Eder Judgment is attached hereto as Exhibit E.

30. Mr Justice Eder held that the Award was "manifestly valid" for two reasons. First, the Opinion and Order's rejection of Laos' objections to the enforceability of the Award gave rise to an issue estoppel under English law. Eder Judgment at ¶¶ 20, 28. Second, regardless of the New York courts' decisions, Laos' objections to the enforceability of the Award lacked any merit. *Id.* at ¶ 29. For example, Mr Justice Eder squarely rejected Laos' objection that the arbitral tribunal wrongfully exercised jurisdiction over disputes arising under the Mining Contracts because this objection had "nothing to do with jurisdiction at all." *Id.*

31. At the end of his judgment, Mr Justice Eder ordered that Laos "shall pay security in two tranches, that is in the sum of US$35 million within 21 days and the balance, that is US$36,710,000 within seven days thereafter, failing which the first and second claimants be permitted to enforce the award as a judgment of the English court." *Id.* at ¶ 34.

32. On November 1, 2012, Mr Justice Eder issued an Order that had been agreed by the parties. A true and correct copy of the Order is attached hereto as Exhibit F.

33. Paragraph (2) of Mr Justice Eder's November 1, 2012 Order required Laos to pay into Court the sum of $35 million on or before November 16, 2012 and the balance of the Award plus accrued interest by November 23, 2012. Order at ¶ 2. Paragraph (3) provided that "[i]n the event that the Defendant fails to pay either instalment as specified in paragraph (2) hereof, the Claimants have permission to enforce the Final Award as a Judgment of the High Court of England and Wales." *Id.* at ¶ 3.

34. Laos failed to pay any security into Court on or before November 16, 2012. Accordingly, on November 19, 2012 Plaintiffs applied for an Order that judgment be entered against Laos in the amount of US$71,594,600.

35. On November 23, 2012, Mr Justice Field issued an Order dated November 19, 2012 (the "Field Judgment") ordering that "judgment be entered against the Defendant in the sum of US$71,594,600 or, the sterling equivalent at the time of payment, together with interest continuing at the rate of 9% per annum (being the daily sum of US$13,860) until such sum is paid." A true and correct copy of the Field Judgment is attached hereto as Exhibit G.

36. Plaintiffs duly served the Field Judgment on Laos.

37. Laos has not satisfied any part of its debt to Plaintiffs under the Field Judgment, nor has it sought to appeal the Field Judgment. The deadline for Laos to file an appeal of the Field Judgment has expired.

**E.     The Proceedings to Set Aside the Award in Malaysia**

38. On November 3, 2010, Laos commenced proceedings in the High Court of Malaya at Kuala Lumpur to set aside the Award. By doing so, Laos intentionally and materially breached the Covenant Not to Sue.

39. In the Malaysian proceedings, Plaintiffs argued that (among other things):

   (a)   Laos' objections to the enforceability of the Award, including its objection that the arbitral tribunal wrongfully exercised jurisdiction over disputes arising under the Mining Contracts, had already been rejected by the courts in New York and England.

   (b)   On Laos' own case, the tribunal's jurisdiction was governed by New York law.

   (c)   Under these circumstances, it was a clear abuse of the Court's process for Laos to raise the same jurisdictional objections in the set-aside proceedings that the courts in New York, applying New York law, had already squarely and definitively rejected.

40. On December 27, 2012, the High Court of Malaya issued a judgment (the "Malaysian Judgment") setting aside the Award on the sole ground that the arbitral tribunal wrongfully exercised jurisdiction over disputes arising under the Mining Contracts.

41. In its judgment, the High Court of Malaya simply ignored Plaintiffs' abuse of process argument (among others).

42. On January 4, 2013, Plaintiffs filed a notice of appeal against the Malaysian Judgment with the Court of Appeal of Malaysia.

### F. The Proceedings to Enforce the Award in France

43. On July 15, 2010, Plaintiffs commenced proceedings to enforce the Award in France by way of an *ex parte* application before the Paris Court of First Instance.

44. On July 20, 2010, the Paris Court of First Instance granted "*exequatur*" in respect of the Award, allowing it to be enforced as a judgment in France. Laos then appealed against the decision of the Paris Court of First Instance.

45. On February 19, 2013, the Paris Court of Appeal issued a judgment granting Laos' appeal and setting aside the Paris Court of First Instance's judgment.

46. The sole ground for the Paris Court of Appeal's judgment was that the arbitral tribunal wrongfully exercised jurisdiction over disputes arising under the Mining Contracts. The Paris Court of Appeal did not accord *res judicata* effect to the decisions of the New York and English courts rejecting Laos' objections to the enforceability of the Award because the French courts do not take into account the decisions of other courts when ruling upon an application to enforce a foreign arbitral award.

### Cause of Action

47. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 46 as if set forth fully herein.

48. The United Kingdom of Great Britain and Northern Ireland is a "foreign state" within the meaning of N.Y. C.P.L.R. 5301(a).

49. The Field Judgment is a "foreign country judgment" within the meaning of N.Y. C.P.L.R. 5301(b).

50. The Field Judgment is "final, conclusive and enforceable" in England within the meaning of N.Y. C.P.L.R. 5302.

51. The Field Judgment grants recovery of a sum of money and is enforceable by an action on the judgment in New York pursuant to N.Y. C.P.L.R. 5303.

52. None of the grounds for non-recognition of a foreign country judgment set forth in N.Y. C.P.L.R. 5304 applies to the Field Judgment. In particular, while N.Y. C.P.L.R. 5304(b)(5) provides that a foreign country judgment "need not be recognized if . . . [it] conflicts with another final and conclusive judgment," this ground for non-recognition does not apply to the Field Judgment because (among other things) both the High Court of Malaya at Kuala Lumpur and the Paris Court of Appeal departed from normal *res judicata* principles by permitting Laos to litigate the merits of its objection that the arbitral tribunal wrongfully exercised jurisdiction over disputes arising under the Mining Contracts, even though this Court and the London Court had already squarely and definitively rejected this objection.

53. The Field Judgment is required to be enforced pursuant to N.Y. C.P.L.R. 5303.

WHEREFORE, Plaintiffs pray:

(a) That the Court enter an order pursuant to N.Y. C.P.L.R. 5303 enforcing the Field Judgment against Laos; and

(b) That, on the basis of the Field Judgment, the Court enter judgment that Laos is liable to Plaintiffs jointly in the amount of $71,594,600, plus interest accruing at the rate of 9% per annum from November 19, 2012 to the date of satisfaction; and

(c) That Plaintiffs be awarded such other and further relief as may be proper.

Dated: New York, New York
February 27, 2013

Respectfully submitted,

*/s/ James E. Berger*

James E. Berger
Charlene C. Sun
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
(212) 556-2100

Thomas C.C. Childs
KING & SPALDING INTERNATIONAL LLP
125 Old Broad Street
London EC2N 1AR
United Kingdom
+44 20 7551 7579